The final matter on today's argument calendar is Kleinsasser v. Progressive Direct Insurance Company. I would like to reserve seven minutes for rebuttal. Alright. Thank you, Your Honor. Your Honors, this is one of a series of basically functionally identical cases that have been prosecuted in Washington courts involving the statutorily It's hard not to take your mask off. A little out of practice at this. Involving the statutory mandated uninsured motorist coverage in this state. Washington is unusual. It has a requirement that you have and offer uninsured motorist property damage coverage. It gives you, in Washington State, recovery for diminished value under the leading case of Mueller v. Farmer's Insurance Company where the Supreme Court of Washington held that you can recover the market value loss of your vehicle after an accident where the damage cannot be fully restored to its pre-loss condition, i.e., where you have something tangibly different about the vehicle and it is not simply an intangible loss. The courts in Washington and Pacheco ruled that that coverage cannot be excluded. The insurer here refused to pay it. The Superior Court held that the policy covered diminished value and they had to pay it. Well, class certification was pending 14 months into this matter and 14 days before Progressive was required to file their opposition to class certification, the case was removed. So this was a case with a very, very unusually developed record at the point of removal. There was not only the pleadings. There had been a round of briefing about what the issues were and a motion to dismiss and there was a pending class certification motion which showed exactly what was at issue. There was no question about what the damages were at issue. Now, the first jurisdictional issue is where I'm going to start, Your Honor, because the record is obviously long. The case went on for a long, long time. The first jurisdictional issue was never responded to by Progressive. They didn't respond to the issue and they presented no evidence and that alone is grounds to find that there was no jurisdiction over this matter. And the rule is very clear. It's been laid out in multiple decisions from the U.S. Supreme Court and this court, which is that remand is required when the briefing and the evidentiary submissions based upon the notice of removal with, quote, competent proof under the same evidentiary standards that govern in a summary judgment context using, quote, reasonable assumptions, end quote, founded on the allegations of the complaint, and that's from Arias v. Residence Inn, with the district court, end quote, weighing the reasonableness of the moving party's assumptions, not supplying further assumptions, end quote, that's from Harris, with the burden being upon the removing party when they fail to meet the burden that remand is required. But isn't that what happened here? I mean, the notice of removal, so you look at the number of claimants, you look at the damages per claimant, multiply them, it's over $5 million. The district court had a hearing at which it determined that it's over $5 million. What was wrong with that? That's not what happened, Your Honor. What happened was that it was fully briefed, the issue was before the court, and there was no evidence to show $5 million at issue. The notice of removal relied upon what plaintiffs had pled, the number that plaintiffs had pled on a per claim basis. The case was completely briefed. The only evidence before the court was an assumption that you could extrapolate from a number that Dr. Siskin had put forward. The evidence showed that was an unreasonable assumption because that case was involving collision claims that were far more serious. The briefing was done. The court was required to look at that summary judgment evidence at that point. And if Progressive had not carried its version of summary judgment type evidence, remand was required. Because if they haven't proved their case at that point, if they haven't done what Dark Cherokee says they have to do, that you put forward the numbers, as you said, and if they haven't proved it with their notice of removal and they haven't put forward evidence, remand is required at that point. Because jurisdiction doesn't exist. There is not a right at that point for the district court to say, I'd like some further evidence. Here's another theory that we should do. By the way, a theory that wasn't pled by plaintiffs in any respect. Think of this as if this was a summary judgment case. You move for summary judgment. The district court says, well, I'm not going to grant you summary judgment because I want to hold a trial instead and have witnesses come in. No. You fail to carry your burden. Summary judgment is denied. But in this case, when they fail to carry their burden of proof and persuasion with evidence, which the Court never accepted their evidence, it's not based on reasonable assumptions, then remand is required. And there's no intrinsic harm in that, Your Honor, because under CAFA, assuming that these contingent future events occurred, there could be a remand at that time. I mean, the district court made the assumption that, gee, at some point in the future, something different is going to be done in this case. Plaintiffs are going to stop what they've pled using the figures of a market analysis, what the Mueller court did. At some point in the future, they're going to stop doing that, and they're going to have an individual adjuster look at all these claims. So let's make up an individual adjuster doing it. But that wasn't what plaintiffs pled. And this court has repeatedly said, most clearly, with Judge Callahan's decision in Aria v. Residence Inn, that one has to have one's assumptions based upon what is pled. So in essence, the district court came to its own conclusion that it wasn't argued by progressive in any respect, that at some point in the future, Dr. Siskin's stuff wouldn't be valid because it contained stigma. It didn't contain stigma. Now, that was not based on reasonable assumptions because, in fact, stigma was not pled. We've demonstrated repeatedly. The defendants admitted, their counsel admitted stigma wasn't pled. Their expert admitted stigma wasn't pled. So what happened here was that remand should have been granted based upon, and this Court, which has de novo review, can find that remand should have been granted based upon the briefing and the summary judgment style evidence. Anything beyond that, the Court did not have jurisdiction. But the Court then erred in asking for evidence that was not based upon what was at issue in the case and a method of determining damages which was not at issue. It hadn't been pled by us, which changed the entire complexion of the case. Then issuing a ruling that it would not consider what was pled because the only cognizable evidence, Your Honor, was that when you applied Dr. Siskin's method to a sample of claims, you ended up with $1,156 per claim and $3.8 million in damages. That's not $5 million. So it was only by adopting a new method that was suggested by the Court that wasn't pled, which is manifestly erroneous, some evidence that was based upon nothing, basically an assertion that every single car, no matter what the damage was, would just be magically worth less than the amount between the full retail price of the car and then the rough blue book. The evidence was that that made no sense. It wasn't what was pled. But that's what the jurisdiction was based upon. And also an assumption, Your Honor. Do I ask, does Washington have a requirement that the stigma damages that the district court was relying on, do those have to be pled with particularity? No. So we didn't plead stigma, Your Honor. Well, but I guess that's my question is, if it doesn't have to be pleaded with particularity, could the — why was it wrong for the district court to say, even though it's not pleaded, it could still be a kind of damage that you would get? Because we didn't raise it. Our pleading said we didn't raise it. Our pleading said we — Did your pleading say — I mean, your pleading didn't raise it, but did your pleading disclaim it? Yes. Our class certification brief said we're not seeking stigma. The complaint said we're seeking only the recovery under Molar III. Dr. Siskin, we said, Dr. Siskin's calculating our damages. Dr. Siskin says I'm not calculating stigma. The argument for stigma, Your Honor, is that somehow there's a car out there that has a wrong CARFAX report on it. That's what the argument is, Your Honor, that the CARFAX is wrong, and so people take some money off of it, and that's stigma. That's what — it's a footnote in our brief. I think it's footnote 26. That's what the testimony was. That's what the court thought stigma was. But everybody who was in the class, every one of these 3,307 people, Your Honor, had an accident because they're not in the class unless the records of the insurance company show they had an accident. They had $1,000 worth of damage, and they had damage to the body or frame or structure of the vehicle. There is absolutely no possible way that that situation could exist in this class. This class is defined not to have that in it. And that's what the Mueller III court found. That's what the Supreme Court of Washington found. Twice the Court of Appeals has addressed this. In Laughlin and in McGraw too. And every single court to have looked at this has realized that stigma is not part of what is pled. But if it was, Your Honor, if stigma was, it doesn't make the class bigger. We have a certain number of claims, 3,307 claims. That's what the court found. That's undisputed. Actually, the number's a little high for reasons we said. The court got the math wrong. But for this purposes, it's fine. 3,307, Your Honor. If the court was right, which it is not, that some of those were stigma claims, they would have lower damages. Why? Because no car that it's just has a fake car fax, but nothing's wrong with the car. There's just a bad report. That car isn't worth, doesn't have more loss in market value than a car that's actually been damaged. And everybody agrees on that. The problem here, Your Honor, was that the theory regarding Dr. Siskin wasn't ever pled. It wasn't ever argued. It was a creation of the district court. And the district court was basing it on unreasonable assumptions. There's no way the class got bigger by adding stigma. It didn't add more claims. Those claims would have lower values, lower diminished value if they were in the class. But they weren't in the class. It just simply makes no sense. One has to assume that there's some mythical stigma out there. And with due respect to the district court, the district court believed strongly that stigma was an issue. The district court had issued rulings that were directly to the contrary of what Moeller v. Farmers eventually held. And the district court may be remembering that, but the Washington Supreme Court has set the law on what stigma is. Stigma is when a car is fully restored. And if that happens, you're not in this class. So it just was not a fact situation that could occur. So I'll rest on my brief, Your Honor, for the rest of the arguments. But I think it's clear that this was a case where jurisdiction did not exist on the briefing. And even if the district court somehow had authority to ask for new evidence and new theories, the grounds on which jurisdiction was found were fundamentally unreasonable, as even defendant's own expert has admitted. Thank you, counsel. Good morning. May it please the Court. My name is Kimberly Kochus, and I'm here today on behalf of the appellees. The only legal argument that plaintiffs make in this case is that somehow the district court was too diligent, was too thorough in analyzing CAFA jurisdiction. Plaintiff makes this argument with no support. And that's because there is no support. That's exactly what a district court is supposed to do. They're supposed to be thorough and diligent in determining whether or not the court has jurisdiction. This court was faced with a similar predicament in Ibarra versus Mannheim as the district court was in our case. In Ibarra, what the Ninth Circuit did was it looked at the facts of the case and the district court's decision remanding the case, and it actually referred the case back to the district court and said, look, these parties need to look at the real evidence, what's actually in dispute in this case, and do a full evaluation using actual class information. That's exactly what was done here. The district court asked the parties to look at the actual class data. And when the parties looked at the actual class data, there was no question that the amount in controversy was satisfied. The rest of plaintiff's arguments relate purely to the district court's factual findings, and those are subject to only clear error review. As Judge Miller pointed out, everyone agrees on the methodology to calculate the amount in controversy in this case. There's no dispute about that. The only question is what methodology can be used. The complaint doesn't in any way limit the methodology that can be used to determine the amount in controversy. Siskin's not referenced in the complaint. There's no methodology set forth in the complaint. In fact, the only numbers relating to damages in the complaint were contrived by plaintiff's counsel, not Siskin. Nothing in the complaint limits the amount in controversy in any way. And it's further emphasized by the fact that plaintiff himself in this case used Mr. Harber's methodology with respect to determining damages on summary judgment. Plaintiff argument amounts to a tails-I-win, heads-you-lose type of an argument. They can use Harber's methodology to determine damages, but the district court, for some reason, can't rely on it to determine damages. There's also no dispute here that Progressive followed Harber's methodology. Harber had set forth very clearly how he determined diminished value damages when doing his calculations, and Progressive followed the simple formula. That's the evidence that the court looked at and that the court weighed and the court determined met the CAFA $5 million amount in controversy requirements. Because Progressive showed, by preponderance of the evidence, that the amount in controversy exceeded $5 million, the district court's decision should be affirmed. Can you respond to the argument that stigma damages would actually lower the amount in controversy? It's not so much that stigma-regardless of whether stigma damages lowers the amount in controversy or raises the amount in controversy, the point is that Siskin's model is just a bad fit for this case. In Jenkins or Van Tessel versus State Farm, Judge Settle ruled in a certification order that Siskin's model is outdated. It doesn't have any new data. It's stale, and it's something that's not reliable for determining certification. And this court affirmed that decision. Maybe I'm wrong, but I thought the district court relied on the fact of stigma damages to then get it over the $5 million. It was two reasons. One, it found the district court discredited Siskin's application for two reasons. One, because it just doesn't fit the contours of this case because the data is old and stale, as the court had found in Jenkins versus State Farm. And then, in addition, it found it, again, didn't follow the contours of the complaint because of the issue relating to stigma damages, that plaintiff's complaint was incredibly broad. It didn't in any way exclude stigma. And because of that, it's possible that stigma was included. And, in fact, in Moeller, the dissent said that stigma is something that's still viable. It might be on the table. It may or may not be something that's covered. And that's why the district court found that Harbor's methodology was more reasonable in this context because it measured the market value, which is what plaintiff's complaint pled. Briefly, Your Honor, just addressing the summary judgment portion of plaintiff's appeal. With respect to the district court's finding that summary judgment was appropriate on Progressive's affirmative defense of material misrepresentation, there is no dispute regarding the underlying facts. Progressive demonstrated that the plaintiff submitted false information in connection with a claim that was false, it was material, and it was intended to influence his DV claim. There are no disputes about any of those facts, and as such, summary judgment was appropriate in this case. Plaintiff went to a salesman at Fugate Ford, and he specifically asked that salesman to write this false letter. The salesman, wanting a sale in the future, complied, and he wrote the letter for plaintiff. Plaintiff then received the letter from the salesman. Knowing that it was false, plaintiff nonetheless submitted that letter to his attorney, who produced it in litigation, and to plaintiff's expert, who also reviewed the letter as well. These types of material misrepresentations are exactly why Washington upholds these types of insurance provisions to prevent insurance fraud. Because there's no question that the Fugate letter was false, and that it was provided to Progressive with the intent to influence the claim, summary judgment was appropriate. And then finally, with respect to certification, which is also before the panel, you don't need to address it because summary judgment was appropriate. Because summary judgment was appropriate, there's no reason to address certification. Unless the panel has any additional questions, then I thank you for your time. Thank you. All right. Thank you. I'd like to go back to your question, Your Honor, because I think you hit exactly it. The evidence was that if in that 3,307 class members, some of them were stigma losses, okay? The class was defined so there weren't stigma losses, because you had to have a repair estimate with a certain amount of damage, so it wasn't one of these fake car faxes. But even if hypothetically they were in the class, that would have reduced the damages, not increased it. Now, she says, oh, well, the dissent says you could have it. The dissent in Mueller is not the law in the state of Washington. The district court adopted the viewpoint of a dissent from the Supreme Court of Washington. He based jurisdictions if the dissent was the law. It isn't the law. Mueller 3 is the law. We pled claims expressly under Mueller 3. We referenced Mueller 3, that that was the relief we were seeking in our complaint. We did so in our class certification brief, which was on file. And the next argument that's made is, oh, well, Judge Settle excluded Dr. Siskin in another case. Well, the case came up, and the question is, does the court have jurisdiction? The question is, what is the status of that case in state court? Siskin has uniformly been approved by every single other court that's ever looked at his approach, including the Supreme Court of Washington. So that case sitting in state court, Siskin is perfectly admissible. His numbers are perfectly acceptable. That is what the state of the case is at the time. In essence, what they're arguing is, well, once the case is removed, assuming the court finds jurisdiction, then he might exclude Siskin. Then plaintiffs might have to come up with a new theory of the case. That's a contingent future event. The Supreme Court made crystal clear you don't base jurisdiction on, quote, contingent future events. The judge, in essence, assumed, the district court assumed that it would have jurisdiction. It could then change the proof the way it believed the case would have to be pled and found it had jurisdiction based upon this new lawsuit that it would have. And by the way, Judge Settle did not exclude Dr. Siskin's work in the Jenkins case. That's false. He said his work was admissible and could use as a methodology to prove class certification. But he believed that his data was old and that in order to admit it on the merits, you'd have to update his work. And we didn't dispute that fact. But the evidence that he put forward, and the only evidence, was his work. That was what was at issue at the time that the case was removed. And so the assumption that somehow it didn't fit, even their own expert, Dr. Salve, said that Dr. Siskin matched this case. There is literally nothing but assertions that somehow that wasn't what was pled. And the notion that there would be extra, that there would be some kind of additional damages, was wrong. As I think you indicated, and the record is very clear, that would have reduced the amount of controversy, which shows that the jurisdiction was based on fundamentally unreasonable assumptions. Well, if you have no further questions, thank you very much. All right. Thank you, counsel, for both sides. The matter is submitted. And the court will be in recess until tomorrow morning. All rise. The case is submitted.
judges: NGUYEN, MILLER, BUMATAY